OPINION
{¶ 1} Appellant A.S., mother of D.T., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, awarding permanent custody of D.T. to Franklin County Children Services ("FCCS"). Because the trial court did not err in denying the motion of D.T.'s paternal second cousin *Page 2 
to intervene as a party, and because R.C. 2151.414(B)(1)(d) is not unconstitutional, we affirm.
 {¶ 2} On November 8, 2004, FCCS filed a complaint for abuse, neglect and/or dependency alleging D.T., born November 5, 2004, tested positive at birth for cocaine and marijuana. After an emergency care order was issued, the trial court on November 10, 2004 determined D.T. was neglected and dependent, a finding D.T.'s parents did not contest. D.T. was temporarily committed to the custody of FCCS and was placed in foster care at the home of foster parent J.Q., where she continued to reside throughout these proceedings.
 {¶ 3} FCCS and D.T.'s parents agreed to a case plan aimed at reunification; the court approved and adopted the case plan on January 24, 2005. Because the parents failed to complete the case plan, FCCS filed a motion for permanent custody on October 27, 2005, alleging that, pursuant to R.C. 2151.414(B)(1)(a), D.T. could not be placed with either parent within a reasonable time or should not be placed with her parents. Alternatively, FCCS alleged D.T. was abandoned, as that term is used in R.C. 2151.414(B)(1)(b). Hearings on FCCS's motion were repeatedly continued due to the parents' incarceration and their requests for appointed counsel. As a result of the delays, FCCS amended its complaint on July 6, 2006, adding an allegation under R.C. 2151.414(B)(1)(d) that D.T. had been in temporary custody under the care of FCCS for 12 or more months of a 22-month period ending on or after March 18, 1999.
 {¶ 4} On August 17, 2006, the trial court established a deadline of August 31, 2006 for all relatives, interested in seeking possible placement of D.T., to contact FCCS *Page 3 
and file motions for custody with the court. As of the deadline, no filings were made with the court, but T.H., designated in the record as a paternal second cousin, subsequently filed a motion on December 6, 2006 seeking intervention as a party and custody of D.T.; J.Q. filed a similar motion on February 16, 2007. On April 18, 2007, the trial court joined J.Q. as a party but denied T.H.'s motion to intervene, concluding T.H. lacked a relationship with D.T.
 {¶ 5} Trial was held May 16, 17, and 18, 2007, and again on June 11, 12, and 13, 2007. Both parents testified, as did J.Q., T.H., the FCCS case worker, and the guardian ad litem. The trial court issued its decision on October 4, 2007 granting FCCS's motion for permanent custody of D.T. and terminating the parents' parental rights. The court also denied T.H.'s motion for custody and dismissed J.Q.'s motion for custody as moot.
 {¶ 6} Appellant appeals, assigning two errors:
 Assignment of Error One
 THE TRIAL COURT'S DENIAL OF [T.H.'s] MOTION TO BE MADE A PARTY WAS ARBITRARY AND AN ABUSE OF DISCRETION.
 Assignment of Error Two
 A PERMANENT CUSTODY ORDER UNDER ORC § 2151.414(B)(1)(D) IS UNCONSTITUTIONAL AS IT CREATES AN UNREBUTTABLE PRESUMPTION OF PARENTAL UNFITNESS.
I. First Assignment of Error {¶ 7} Appellant's first assignment of error asserts T.H. should have been permitted to intervene in the proceedings that led to determining custody of D.T. Appellant contends the arbitrariness of the trial court's order is apparent from two different aspects *Page 4 
of the proceedings. Initially, appellant noted the trial court's deadline itself was arbitrary, falling nearly nine months before the trial occurred. Additionally, appellant points out the trial court denied T.H.'s motion to intervene but then joined J.Q. as a party even though he filed his motion to intervene more than two months after T.H. filed her motion. Appellant's first assignment of error thus resolves to whether the trial court acted arbitrarily in granting J.Q.'s motion to intervene while denying T.H.'s motion.
 {¶ 8} Initially, we question appellant's standing to assert the rights of others who are not parties to this appeal. See In re Conn, Franklin App. No. 03AP-348, 2003-Ohio-5344, at ¶ 7. An appellant cannot raise issues on another's behalf, especially when that party could have appealed the issues appellant posits. Although one who was not a party to an action generally has no right of appeal, because T.H. attempted to intervene as a party she has standing to appeal. In re J.W., Franklin App. No 06AP-864, 2007-Ohio-1419, at ¶ 24, citing In re Fusik, Athens App. No. 02CA16, 2002-Ohio-4410. An order denying a motion to intervene constitutes a final appealable order. In re C.G., Preble App. No. CA2007-03-005, 2007-Ohio-4361. T.H. could have appealed the denial of her motion, but failed to do so.
 {¶ 9} Even if we assume appellant has standing, she could not prevail. Ohio courts have applied the Rules of Civil Procedure and the Rules of Juvenile Procedure in determining intervention issues in R.C. 2151.414
permanent custody proceedings. See, e.g., In re H.W., 114 Ohio St.3d 65,2007-Ohio-2879 (applying Juv. R. 2[Y] and also stating "[t]he Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable"); In re J.W., supra; In reM.S., Summit App. *Page 5 
No. 22158, 2005-Ohio-10. Juv. R. 2(Y) defines a "party" for purposes of the Rules of Juvenile Procedure to include the child subject of the proceedings, the child's parent or parents, and, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and "any other person specifically designated by the court." T.H. falls within none of the categories of persons deemed parties to the proceedings, and appellant does not contend otherwise. Similarly, Civ. R. 24(A)(2) allows intervention as of right for parties possessing a legal interest or right in the care and custody of the child. In re J.W., supra, at ¶ 25. Appellant does not contend T.H. possesses a legal right or legal interest in the care and custody of D.T., so Civ. R. 24(A)(2) does not advance appellant's assigned error.
 {¶ 10} The trial court nonetheless has discretion under Civ. R. 24(B) to permit intervention in the circumstances set forth in the rule. An order denying a motion to intervene under Civ. R. 24(B) will be reversed only upon a showing that the trial court abused its discretion. In reJ.W., supra, at ¶ 26, citing In re Goff, Portage App. No. 2001-P-0144,2003-Ohio-6768, and In re M.S., supra. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citing In re Wright, Franklin App. No. 04AP-435, 2004-Ohio-4045, citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} In most instances, the party seeking to intervene in a permanent custody proceeding is a grandparent. A grandparent may be made a party in a permanent custody proceeding if he or she (1) possesses a legal right or protected interest in custody or visitation, or (2) stands in loco parentis to the child, exercised significant parental control, or assumed parental duties for the benefit of the child. In reJ.W., supra, at ¶ 27, citing In *Page 6 re Schmidt (1986), 25 Ohio St.3d 331, 338 (Celebrezze, C.J., concurring). If any of the conditions contained in the two prongs be satisfied, denial of the motion to intervene constitutes an abuse of discretion. Such criteria, if satisfactory in ascertaining the intervention rights of grandparents, apply equally as well in determining whether a trial court has abused its discretion in adjudicating the motion of a more distant relative, such as a second cousin, to intervene in permanent custody proceedings.
 {¶ 12} Because the first prong of the test tracks the language of intervention as of right in Civ. R. 24(A), a standard appellant does not contend T.H. satisfies, we address the second prong that considers whether T.H. stood in the role of a parent for D.T. According to the record, T.H. did not, as she never exercised parental responsibility, duties or control. As a result, even if T.H. had filed a timely motion to intervene, the trial court, in its discretion, could have properly denied her motion. T.H.'s untimely motion provided further reason for the trial court, under the circumstances here, to deny intervention.
 {¶ 13} By contrast, J.Q.'s exercise of parental responsibility towards D.T. places his intervention within the trial court's discretion. As the trial court noted in its decision, D.T. "has never known any other permanent care giver other than her foster father. He is her rock, and she is a child with special emotional needs that require professional care and persistent efforts by her foster father." (Decision, 17.) While the trial court may not have been required to grant J.Q.'s intervention motion, In re Thompson (Apr. 18, 1995), Franklin App. No. 94APF08-1144, the wide discretion the trial court possessed in determining parties to a juvenile court action includes naming foster parents as parties. In *Page 7 re Zhang (1999), 135 Ohio App.3d 350, 357, citing In re Franklin (1993),88 Ohio App.3d 277.
 {¶ 14} In an effort to constrain the trial court's discretion in determining her motion to intervene, T.H. at trial emphasized she is a relative of D.T. A trial court, however, is not required to consider placing a child with a relative prior to granting permanent custody to an agency, as relatives seeking custody of a child are not afforded the same presumptive rights that a parent receives. In re Zorns, Franklin App. No. 02AP-1297, 2003-Ohio-5664, at ¶ 28. Indeed, a trial court is not even required to determine whether a relative is a suitable placement option. In re J.S., Franklin App. No. 05AP-615, 2006-Ohio-702, at ¶ 34. In the absence of T.H.'s significant involvement in D.T.'s life, the trial court did not abuse its discretion in denying T.H.'s motion to intervene, even though T.H. is a relative. See In reHartley (Oct. 13, 1988), Athens App. No. 1399 (stating "a court may grant or deny a motion to intervene made by grandparents or other relatives, but the determination rests not on the degree of kinship but on the demonstrated concern shown by the movant for the welfare of the child").
 {¶ 15} Appellant nonetheless suggests that denying T.H.'s motion to intervene prevented T.H. from developing a relationship with D.T. Appellant's argument turns the intervention standard on its head. AsIn re J.W. makes clear, intervention in a permanent custody proceeding is predicated on the intervenor's pre-existing exercise of parental responsibilities with regard to the child. Mere desire to establish such a relationship and become involved in a child's life is not grounds for intervening. *Page 8 
 {¶ 16} In the final analysis, even though T.H. was not a party to the permanent custody proceedings, she not only was permitted to testify at the trial, but the trial court considered whether she would be an appropriate placement for D.T. Moreover, despite her late filing, FCCS and the guardian ad litem completed separate investigations into T.H.'s suitability for custody. Neither the investigation results nor her testimony favored T.H. Due to her limited visitation with D.T., the investigators found no bond existed between T.H. and D.T., and T.H.'s home study was not approved. Moreover, in its decision, the trial court noted T.H.'s testimony regarding her finances was not credible, she has a criminal record, and she demonstrated poor judgment in providing for the safety of her own children by keeping two dogs bred for aggressiveness a year after the dogs bit a neighbor. As a result, even had T.H. been given party status, the outcome of the proceedings would not have been different.
 {¶ 17} Appellant's first assignment of error is overruled.
II. Second Assignment of Error {¶ 18} Appellant's second assignment of error contends that R.C. 2151.414(B)(1)(d) is unconstitutional because it creates an irrebuttable presumption of parental unfitness and thus violates the substantive due process guarantee of the United States Constitution.
 {¶ 19} Initially, appellant failed to raise the argument in the trial court. The failure to raise at the trial court level the constitutionality of a statute or its application, when the issue is apparent at the time of trial, waives the issue and deviates from this state's orderly procedure. The issue therefore need not be heard for the first time on appeal. In *Page 9 re N.W., Franklin App. No. 07AP-590, 2008-Ohio-297, at ¶ 37, citingState v. Awan (1986), 22 Ohio St.3d 120, syllabus. This court has specifically applied this waiver doctrine to the same argument appellant raises here. Id., citing In re Andy-Jones, Franklin App. No. 03AP-1167,2004-Ohio-3312, at ¶ 20.
 {¶ 20} Notwithstanding waiver, this court also addressed the issue: whether R.C. 2151.414(B)(1)(d) is unconstitutional by creating an irrebuttable presumption of parental unfitness. On each occasion, our review found the argument to lack merit. See In re N.W., supra, at ¶ 38, and the cases cited therein. Appellant's second assignment of error is overruled.
 {¶ 21} Having overruled appellant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 McGRATH, P.J., and BROWN, J., concur. *Page 1